UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL CARMACH,

                    Plaintiff,

-vs-                                                    Case No.  6:05-cv-1118-Orl-JGG

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Michael Carmach ["Carmach"][1] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for disability insurance benefits.  *See* Docket No. 1 (complaint).   For the reasons set forth below, the Commissioner's decision REMANDED pursuant to sentence four of 42 U.S.C. § 405 (g).

## I.    PROCEDURAL HISTORY

On July 22, 2003, Carmach  filed a claim for disability insurance benefits and supplemental security income benefits, claiming disability as of August 29, 2001.  R. 55.  On August 17, 2004, the Honorable Hanford O'Hara, Administrative Law Judge ["ALJ"], held a 15-minute hearing on Carmach's claim in Daytona, Florida.  R. 272 - 289.  Attorney Richard Swartz  represented Carmach at the hearing.  R. 272.  The ALJ heard testimony from Carmach only.

_____

[1]Plaintiff's last name is spelled in the records as both "Carmach" and "Carmack."  The Court assumes the records all relate to the Plantiff, Michael Carmach.

On April 5, 2005, the ALJ issued a decision that Carmach was not disabled and not entitled to benefits.  R. 13-21.  Following a review of the medical and other record evidence, the ALJ found that Carmach could perform his past relevant work as a dishwasher, porter, and bartender.  R. 20, Findings 7, 8.  The ALJ found that Carmach retained the residual functional capacity ["RFC"] to perform light, unskilled work. R. 20, Finding 6.

Carmach appealed the decision to the Appeals Council.  R. 8-12.  Accompanying the appeal was a letter by Carmach's attorney in which he described an opinion rendered by Dr. Borkosky after the hearing before the ALJ.  R. 10.  Carmach, however, did not submit any additional medical records.  R. 8-12.  After considering the information presented by Carmach's attorney, the Appeals Council denied review.  R. 5-7.  On August 2, 2005, Carmach appealed the Appeals Council's decision to the United States District Court.  Docket No. 1 at 1.  On February 23, 2006, Carmach filed in this Court a memorandum of law in support of his appeal.  Docket No. 15.  On April 24, 2006, the Commissioner filed a memorandum in support of her decision that Carmach was not disabled.  Docket No. 16.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Carmach assigns three errors to the Commissioner.  First, Carmach claims that the Commissioner erred in finding he could perform his past relevant work.  According to Carmach, the finding was not based on substantial evidence because the ALJ failed to question Carmach about the demands of his past work, particularly the mental demands.  Docket 15 at 4-6.  Second, Carmach claims that the Commissioner also erred in finding that he could perform his past work as a bartender because Carmach's last employment as a bartender was more than 15 years prior to the date of

Carmach's alleged disability. Docket 15 at 6.  Third, Carmach claims that the Commissioner erred in finding his testimony not totally credible because the ALJ failed to state the basis for his credibility finding.  Docket 15 at 6-7.

The Commissioner argues that substantial evidence supports her decision to deny disability. First, the Commissioner argues that the medical evidence showed that Carmach's mental capacity was only moderately limited, which supports the ALJ's finding that Carmach could perform his past relevant work.  Docket No. 16 at 5.  Second, the Commissioner argues that the ALJ cited sufficient grounds for finding that Carmach's subjective complaints were not credible.  Docket No. 16 at 8. Third, the Commissioner argues that the regulations do not preclude her from considering jobs performed by the claimant more than 15 years before the alleged disability.  Docket No. 16 at 9.

## III.   THE STANDARD OF REVIEW

### A.   AFFIRMANCE

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B. REVERSAL

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835,

840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1

(11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).   After a

sentence-four remand, the district court enters a final and appealable judgment immediately, and then

loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the
> Commissioner of Social Security, but only upon a showing that there is new evidence
> which is material and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new,

non-cumulative evidence; 2.) that the evidence is material —  relevant and probative so that there is

a reasonable possibility that it would change the administrative result; and 3.) there is good cause for

failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.

1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health and*

*Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner

if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does

not enter a final judgment until after the completion of remand proceedings.[2]  *Id.*

---

[2]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an

-6-

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.   DEVELOPING THE RECORD

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C. § 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.

Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all

_____

extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits.  *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

-7-

the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

## B.    THE FIVE STEP EVALUATION

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and

well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Commissioner*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In this step, the ALJ assesses the claimant's residual functional capacity ["RFC"].  This assessment measures whether a claimant can perform past relevant work despite his or her impairment.  20 C.F.C. § 404.1520 (f); *see also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.C. § 404.1545(b).

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR  82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.C. § 404.1567.

The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v.*

*Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416(i)(3); 423(a), (c).  If a claimant becomes disabled after losing insured status, the claim for disability benefits must be denied despite the claimant's disability.  *See, e.g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### C.    OTHER WORK

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"].  *Foote,* 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).  Exclusive reliance is not appropriate, however, "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a

vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also, MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).

It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

### D.   TREATING PHYSICIANS

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician. *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also, *20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a

physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

### E.  PAIN

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### F.    CREDIBILITY

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

G.     **MEDICAL TESTS AND EXAMINATIONS**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also, Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

H.     **THE EVALUATION OF MENTAL DISORDERS**

The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment, as well as consideration of the degree of limitation such impairment may impose on the individual's ability to work.  The listings for mental disorders are arranged in nine diagnostic categories.  20 C.F.R. Pt. 404, Subpt. P, App. 1.   The criteria in paragraphs B and C of the listings for mental disorders describe those functional limitations associated with mental disorders which are incompatible with the ability to work — i.e. limitations in functional areas deemed essential to work.  A mental impairment is medically equivalent to a listed mental impairment if the medical findings are at least equal in severity and duration to the listed findings.  20 C.F.R. § 404.1526.  An individual meeting or equaling the criteria could not reasonably be expected to engage in gainful work activity.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

-15-

Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity ["RFC"] which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled, but the impairment is nevertheless severe. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

For mental disorders, severity is assessed in terms of the functional limitations imposed by the impairment. Functional limitations are assessed using the criteria in paragraph B of the listings for mental disorders (activities of daily living; social functioning; concentration, persistence, or pace; and ability to tolerate increased mental demands associated with competitive work). A "marked" degree of limitation means more than moderate, but less than extreme. A marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Commissioner employs a technique to ensure that ALJ's obtain, consider, and properly evaluate all evidence needed to evaluate mental impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The technique is used in connection with the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520a and 416.920a.

The presence of a mental disorder should be documented primarily on the basis of reports from individual providers, such as psychiatrists and psychologists, and facilities such as hospitals and clinics. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Information from both medical and non-medical sources may be used to obtain detailed descriptions of the individual's activities of daily living;  social

-16-

functioning;  concentration, persistence and pace;  or ability to tolerate increased mental demands (stress).  This information can be provided by programs such as community mental health centers, day care centers, and family members who have knowledge of the individual's functioning.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  In some cases descriptions of activities of daily living or social functioning given by individuals or treating sources may be insufficiently detailed and/or may be in conflict with the clinical picture otherwise observed or described in the examinations or reports.  It is necessary to resolve any inconsistencies or gaps that may exist in order to obtain a proper understanding of the individual's functional restrictions.

An individual's level of functioning may vary considerably over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  The level of functioning at a specific time may seem relatively adequate or, conversely, rather poor.  Proper evaluation of the impairment must take any variations in level of functioning into account in arriving at a determination of impairment severity over time.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.  This evidence should include treatment notes, hospital discharge summaries, and work evaluation or rehabilitation progress notes if these are available.  20 C.F.R. Pt. 404, Subpt. P, App. 1.  Some individuals may actually have worked during the period of time pertinent to the determination of disability.  Information concerning the individual's behavior during any attempt to work and the circumstances surrounding termination of the work effort are particularly useful in determining the individual's ability or inability to function in a work setting.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

-17-

Particular problems are often involved in evaluating mental impairments in individuals who have long histories of repeated hospitalizations or prolonged outpatient care with supportive therapy and medication. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Individuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired for work than their signs and symptoms would indicate. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The results of a single examination may not adequately describe these individuals' sustained ability to function. It is, therefore, vital to review all pertinent information relative to the individual's condition, especially at times of increased stress. 20 C.F.R. Pt. 404, Subpt. P, App. 1. It is mandatory to attempt to obtain adequate descriptive information from all sources which have treated the individual either currently, or in the time period relevant to the decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Attention must be given to the effect of medication on the individual's signs, symptoms and ability to function. 20 C.F.R. Pt. 404, Subpt. P, App. 1. While psychotropic medications may control certain primary manifestations of a mental disorder, e.g., hallucinations, such treatment may or may not affect the functional limitations imposed by the mental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1. In cases where overt symptomatology is attenuated by the psychotropic medications, particular attention must be focused on the functional restrictions which may persist. These functional restrictions are also to be used as the measure of impairment severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In some cases, the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of

-18-

impairment, the ALJ will consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsening. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement. 20 C.F.R. § 404.1594 (iv).

## V.   **APPLICATION AND ANALYSIS**

### A.   **THE FACTS**

On June 14, 2002, Omar Adams, M.D., of the Atlantic Urgent Care Center saw Carmach for complaints of dizziness. R. 139 - 41. Carmach reported feeling "woozy" and unsteady for the past two weeks in the morning after getting up. According to Carmach, it took him "some period of time" before he feels better. R. 139. He had some nausea but no vomiting. No laboratory tests were conducted. R. 140. Dr. Adams' impression was elevated blood pressure, rule out hypertension, cigarette abuse, hypoxemia, cause undetermined. R. 141. Carmach left before Dr. Adams could complete the examination because Carmach's mother was waiting for him. R. 141.

Gail van Diepen, D.O., evaluated Carmach on August 12, 2002 with for complaints of waking up dizzy, exhaustion, lack of sleep, weight gain of 20 pounds, and diarrhea. R. 144. Dr. van Diepen ordered laboratory tests and prescribed Paxil. R. 144, 147-52. He returned on August 28, 2002 with fatigue and headaches and a strong odor of alcohol. R. 143. It also was noted that he abused tobacco. *Id*. The assessment was increased alcohol, tobacco abuse, fatigue and depression. *Id*. Dr. van Diepen also prescribed Effexor, and advised Carmach to stop drinking alcohol and to stop smoking. *Id*.

On September 19, 2003, J. Jeff Oatley, Ph.D. conducted a psychological evaluation of Carmach pursuant to a referral from the Office of Disability Determinations. R. 153-55. Carmach reported suffering from memory problems and pain in the chest, head and stomach which limited his

-19-

ability to maintain employment.  R. 153.  Dr. Oatley noted that Carmach exhibited a normal energy level, adequate fund of knowledge, coherent speech, full orientation, and an appropriate attention span with no evidence of severe memory deficits.  R. 154.  Carmach also described a normal range of emotions.  R. 154.  The diagnosis was alcohol and nicotine dependence.  R. 155.  The prognosis was guarded due to alcohol consumption patterns.  *Id*.

James R. Shoemaker, D.O., conducted a Social Security Disability evaluation of Carmach on September 23, 2003.  X-rays of the chest revealed moderate retrosternal air space and flattening of the diaphragm, consistent with Chronic Obstructive Pulmonary Disease ("COPD").  The impression was COPD and chronic fatigue syndrome, secondary to questionable COPD versus history of elevated liver enzymes.  R. 156 - 58.

On October 5, 2003, T. Wayne Conger, Ph.D. completed a Mental Residual Functional Capacity Assessment.  R. 179-82.  Dr. Conger determined that Carmach was moderately limited in the ability to maintain attention and concentration for extended periods.  R. 179.  In the "B" Criteria of the Listings, Carmach had no limitations except for moderate difficulties in maintaining concentration, persistence or pace.  R. 175.  Dr. Conger noted that Carmach "acknowledges the mental ability to perform routine tasks within his physical restrictions and also displays an adequate mental status with no significant cognitive deficits noted.  He can relate in a socially appropriate manner and remains functional from a mental perspective."  R. 177.  Dr. Conger diagnosed Carmach as having alcohol dependence and Personality Disorder Not Otherwise Specified with Dependent Feature.  *Id*.

On July 22, 2004, Carmach was treated at the emergency department of Florida Hospital due to hypertension.  R. 225.  He was prescribed medication and directed to follow up in 7-10 days.  *Id*.

On October 6, 2004, Carmach presented himself at the Emergency Department of Halifax Medical Center with complaints of chest discomfort.  R. 234-40.  John E. Prairie, M.D., noted that Carmach complained of a "burning chest pain" accompanied by a shocking sensation that radiated from the chest to his feet.  Dr. Prairie noted that Carmach reported other atypical and bizarre symptoms.  R. 234.  Frontal and lateral x-rays of the chest showed the heart and mediastinum to be normal, the lungs are clear, and osseous structures intact.  R. 237.  The EKG showed normal sinus rhythm without sign of ischemia or ectopy.  R. 234.  The diagnosis was multiple somatic complaints.  R. 234-35.  Dr. Prarie prescribed Darvocet, and released Carmach with directions to follow up with Dr. van Diepen.  R. 235.

At the request of the Office of Disability Determination, Bruce G. Borkosky, Psy.D. conducted a psychological evaluation of Carmach on  November 5, 2004.  R. 244 - 55.  The diagnostic impression was adjustment disorder, pain disorder, alcohol dependence, rule out cognitive disorder NOS and borderline intellectual functioning.  Dr. Borkosky concluded:

> Present result suggests the need for group and family psychotherapy, as well as vocational training and drug/alcohol treatment.  Prognosis was fair.  In terms of functional ability, he had a fair ability to understand, a fair ability to remember and carry out instructions, and a fair ability to respond appropriately to supervision, coworkers, and work pressures.  This evaluation is valid.  Should he be awarded benefits, he is not capable of managing his own funds, due to alcohol abuse.

R. 250.  According to Dr. Borkosky's Medical Source Statement of Mental RFC, Carmach had a moderate limitation in his ability to 1.) understand and remember detailed instructions; 2.) carry out detailed instructions; 3.) make judgments on simple work-related decisions.  R. 253.  Dr. Borsosky also found that Carmach's mental impairment had a moderate effect on his ability to:  1.) interact appropriately with the public; 2.) interact appropriately with supervisors; 3.) interact appropriately

-21-

with coworkers; 4.) respond appropriately to work pressures in a usual work setting; and 5.) respond appropriately to changes in a routine work setting.  R. 253 - 54.  Dr. Borkosky added that it is "unknown how much his performance would increase if he was sober."  R. 255.

**B.     THE ANALYSIS**

**1.     The Commissioner Waived Any Defense Based on the Untimeliness of Carmach's Appeal**

The Social Security Act provides for judicial review of the final decision if the action was commenced within 60 days from receipt of the Appeals Council's letter.  42 U.S.C. § 405(g).  An additional five days is added for mail service.  20 C.F.R. § 422.210.  The 60-day filing deadline is not jurisdictional, but is a statute of limitations that may be waived by the parties.  *Shows v. Dep't of Health & Human Servs.*, 740 F2d 891 (11th Cir. 1984); *Mathews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 763-764 (1975).  Ordinarily, the statute of limitations defense is waived if it is not pleaded as an affirmative defense.  *See Am. Nat'l Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1537 (11th Cir.1983); Fed. R. Civ. P. 8(c).  In some circumstances, however, the defense may be raised at a later time if the plaintiff has not suffered any prejudice.  *See Grant v. Preferred Research, Inc.,* 885 F.2d 795, 797-98 (11th Cir. 1989) (defendant allowed to raise limitations defense in a summary judgment motion because plaintiff previously was aware of defendant's intent to rely on the argument and suffered no prejudice).

In this case, the Appeals Council's letter was dated May 26, 2005.  R. 6.  Adding five days for mailing, Carmach's deadline to file his appeal in the district court was July 30, 2005.  As the deadline fell on a Saturday, Carmach had until the next business day, August 1, 2005, to file his complaint.  Carmach filed his complaint on August 2, 2005, so it was untimely.  The Commissioner, however,

chose not to raise the single-day untimeliness of Carmach's appeal in its answer, by motion, or in its brief, and has waived the defense.

> **2.      Substantial Evidence Did Not Support the ALJ's Determination that Carmach Could Perform His Past Work**

Carmach claims that the Commissioner erred in finding he could perform his past relevant work.  According to Carmach, the finding was not based on substantial evidence because the ALJ failed to question Carmach about the demands of his past work, particularly the mental demands.  The Commissioner does not respond directly to this argument.  Instead, the Commissioner argues that the ALJ properly considered the medical evidence in assessing Carmach's impairments and limitations.

As part of the five-step sequential evaluation process, if the claimant's impairments do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ proceeds to Step Four and determines the claimant's RFC, and whether the claimant can perform his past relevant work.  20 C.F.R. § 404.1520(e).  In determining whether a claimant can perform his past relevant work, the ALJ may consider the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  20 C.F.R. § 404.1560(b)(2); SSR 82-61.

In this case, the ALJ determined that Carmach could perform the functional demands and job duties of his past relevant work as those occupations are generally performed in the national economy.  R. 20.  The ALJ may rely on descriptions of occupations listed in the Dictionary of Occupational Titles (DOT) to define how a job is usually performed in the national economy.  20 C.F.R. § 404.1560 (b)(2); SSR 82-61.

### A.   **Dishwasher**

The ALJ determined that the occupation of dishwasher was one of Carmach's past relevant jobs that he could perform with his RFC of light, unskilled work.  "Light work" is defined as:

> [W]ork [that] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567 (b).

In his decision, the ALJ did not specify which occupational code of the DOT that he considered.  Similarly, the Commissioner's brief on appeal also fails to identify the relevant definition of a dishwasher's duties.  The Court found no DOT code for "dishwasher."  The DOT, however, has been replaced by the O*Net,  which provides a code for dishwashers as 35-9021.00.  Based on the O*Net description, the occupation of dishwasher clearly is unskilled.  The O*Net description, however, does not specify whether the work is considered "light work."  Carmach described his work as a dishwasher as requiring frequent lifting of 25 pounds, with a maximum weight lifted being 100 pounds.  R. 103.  The Court cannot determine whether Carmach's actual work was representative of how the work is performed in the national economy.  The ALJ's decision, therefore, fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.

### B.   Bartender

Second, the ALJ determined that Carmach could perform his past relevant work as a bartender.  Carmach makes two challenges to this finding: (1) that the ALJ failed to determine the demands of the bartending jobs performed by Carmach; and (2) Carmach's work as a bartender was more than 15 years ago and is not properly considered past relevant work.  The Commissioner concedes that the regulations provide that "[w]e do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled . . . "  Nevertheless, the Commissioner argues that the regulation's use of the term "usually" allows the Commissioner flexibility in determining the appropriate time period for past relevant work.  Docket 16 at 9.

The Commissioner relies on regulations  —  20 C.F.R. §§ 404.1565 (a) and 416.965 (a)  — that deal with work experience as a vocational factor when determining whether the claimant is unable to perform his past relevant work and whether he can adjust to other work.  *See,* 20 C.F.R. §§ 404.1560-1569a; 416.960-416.969a.  The definition of "past relevant work" is in 20 C.F.R. § 404.1560(b)(1), which states that "[p]ast relevant work is work that you have done within the past 15 years that was substantial gainful activity, and that lasted long enough for you to learn to do it." *See also*, 20 C.F.R. § 416.960(b)(1) (same definition).

Carmach worked as a bartender from August 1978 to April 1979.  R. 98.  Carmach's bartending work preceded the ALJ's decision of April 5, 2005, by 26 years.  Under the applicable regulations, Carmach's bartending experience was too remote to qualify as past relevant work.  The ALJ's decision that Carmach could perform past relevant work of bartending, therefore, was erroneous.

## C.    Porter

Third, the ALJ determined that Carmach could perform his past relevant work as a porter. Carmach makes two challenges to this finding: 1.) that the ALJ failed to determine the demands of the Carmach's previous position as a porter;  and 2.) that Carmach's work as a porter was not substantial gainful activity because he worked in the job for only three months.  The Commissioner argues that the definition of substantial gainful activity has no time limits.  Docket 16 at 4.

The Commissioner's position is not entirely accurate.  The Commissioner uses several guides to determine whether the work performed is substantial gainful activity.  *See* 20 C.F.R. § 404.1574. One of the guidelines is whether the work was an unsuccessful work attempt.  Ordinarily, if a claimant works for a period of six months or less and is forced to stop working because of his impairment, the work is not substantial gainful activity.  20 C.F.R. § 404.1574 (c).

Carmach worked as a porter/janitor from May 2001 to August 2001 at a resort motel.  R. 98. This was his last regular employment before his alleged commencement of disability on August 29, 2001.  R. 55, 98.[3]   Carmach described his porter/janitor job as "to maintain pool area and property trash.  To vacuum hallways in 100° temperature."  R. 100.  Carmach also stated that he frequently lifted less than 10 pounds, and the heaviest weight lifted was 100 pounds.  *Id*.  The record is devoid of evidence as to whether Carmach's impairment forced him to stop working as a porter/janitor.

_____

[3] At the time of the hearing, Carmach testified to four jobs that he held since filing his application for benefits.  R. 280-81.  He had temporary employment as a banquet server, and worked two banquets for a total of ten hours of employment. R. 279.  Another job was unloading a semi truck; he worked for four hours and felt he could not do the job.  R. 280.  The next was a houseman at Casa del Mar Motel, which he performed for seven weeks.  *Id*.  He was terminated from Casa del Mar for not doing his job.  R. 281.  He got a job at Bell's Outlet, but was terminated one month later for allegedly lying on his job application.  R. 281.

In determining that Carmach could perform his past relevant work as a porter, the ALJ again failed to specify which occupational code of the DOT that he considered. The Commissioner also failed to brief what she considers to be the relevant definition of a porter's duties. The DOT has several definitions for the "porter" occupation. There are two definitions that are specific to hotels and restaurants, Lobby Porter (323.687-018) and Luggage Porter (324.477-010).

The DOT job description of a Luggage Porter does not correspond to the actual job performed by Carmach, and there is no evidence that Carmach has any experience as a Luggage Porter.[4] Further, a Luggage Porter is classified as "medium work," which requires exerting 20-50 pounds of force occasionally and 10-25 pounds of force frequently.

A Lobby Porter, also known as a housekeeper, more closely fits the work performed by Carmach. The DOT defines a housekeeper as:

> Performs any combination of following duties to maintain hotel premises in clean and orderly manner: Moves and arranges furniture. Turns mattresses. Hangs draperies. Dusts venetian blinds. Polishes metalwork. Prepares sample rooms for sales meetings. Arranges decorations, apparatus, or furniture for banquets and social functions. Collects soiled linens for laundering, and receives and stores linen supplies in linen closet. Performs other duties as described under CLEANER (any industry) I Master Title. May deliver television sets, ironing boards, baby cribs, and rollaway beds to guests rooms. May clean swimming pool with vacuum. May clean and remove debris from driveway and garage areas. May be designated according to

---

[4] The DOT defines the job duties of a Luggage Porter as: "Delivers luggage to and from hotel rooms, sets up sample rooms for sales personnel and performs related services as requested by guest or BAGGAGE PORTER, HEAD (hotel & rest.). Transfers trunks, packages, and other baggage to room or loading area, using handtruck. Arranges for outgoing freight, express or mail shipments, computes charges, tags article, and records information, such as addressee, addressor, carrier, and charges, on specified forms. Sets up display tables, racks, or shelves and assists sales personnel in unpacking and arranging merchandise display. May supply guests with travel information, such as transportation rates, routes, and schedules. May escort incoming guest to room [BELLHOP (hotel & rest.)]. May arrange for cleaning, laundering, and repair of guests' clothing and other items. May compute charge slips for services rendered guests and forwards slips to bookkeeping department." DICTIONARY OF OCCUPATIONAL TITLES, Fourth Ed., Rev. 1991.

specialization as Curtain Cleaner (hotel & rest.); Housecleaner, Floor
(hotel & rest.); Linen-Room Worker (hotel & rest.); Porter, Lobby
(hotel & rest.); Vacuum Worker (hotel & rest.).

DICTIONARY OF OCCUPATIONAL TITLES, Fourth Ed., Rev. 1991.  This position, however, requires

heavy work, exerting 50-100 pounds of force frequently.  *Id.*   Carmach, however, only had an RFC

for light work.  The ALJ's decision fails to provide the district court with sufficient reasoning to

determine that the Commissioner properly applied the law.  For the reasons stated above, the ALJ

erred in determining that Carmach could perform his past relevant work.  Reversal and remand

pursuant to sentence four, therefore, is appropriate.

### 3.    The ALJ Erred in Determining That Carmach was Not Credible

Finding 5 of the ALJ's decision states that "the claimant's allegations regarding his limitations

are not totally credible for the reasons set forth in the body of the decision."  R. 21.  Plaintiff argues

that the ALJ failed to articulate specific and adequate reasons for discrediting Carmach's testimony

regarding his subjective complaints.  Further, Carmach argues that medical evidence supports his

claims of shortness of breath and, thus, the record is not obvious as to a credibility finding.  Docket

15 at 6-7.  The Commissioner argues the ALJ cited sufficient grounds for finding that Plaintiff's

subjective complaints were not credible, because he considered both Plaintiff's medical records and

the daily activities that Carmach could perform.  R. 19.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Foote,* 67 F.3d at 1561-62*; Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th

Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not

-28-

disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

In this case, the implication as to a credibility finding is not obvious despite Carmach's alcohol problem.  The ALJ, therefore, was obligated to articulate the reasons for discrediting Carmach's testimony, which he failed to do.  This case must be remanded pursuant to sentence four.

## VI.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED pursuant to sentence four** of 42 U.S.C. § 405 (g) for further proceeding consistent with this opinion.  The Clerk should enter a judgment and close the case.

-29-

**DONE AND ORDERED** this 9th day of February, 2007.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Haila Naomi Kleinman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Hanford O'Hara
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224

-30-